UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

*Electronically Filed*

ARC WELDING SUPPLY CO., INC. and )
CHARLES R. McCORMICK, )
                                       )
         PLAINTIFFS, )
                                         )     CASE NO. 3:16-CV-00173-RLY-MPB
v. )
                                         )
AMERICAN WELDING & GAS, INC., )
                                         )
         DEFENDANT. )

## AMERICAN WELDING & GAS, INC.'S ANSWER AND COUNTERCLAIM

Comes now Defendant American Welding & Gas, Inc. ("AWG"), by counsel, for its Answer and Counterclaim to the Complaint filed by Plaintiffs Arc Welding Supply Co., Inc. and Charles R. McCormick ("Plaintiffs"), hereby alleges and states as follows:

## ANSWER

AWG alleges and states as follows for its Answer to Plaintiffs' Complaint:

## FIRST DEFENSE

Plaintiffs' Complaint fails to state a claim against AWG upon which relief can be granted.

## SECOND DEFENSE

The claims in the Complaint may be barred, in whole or in part, by consent, estoppel, laches, release, and/or waiver.

## THIRD DEFENSE

The claims in the Complaint may be barred, in whole or in part, by the applicable statute of limitations and/or the applicable statute of repose.

## FOURTH DEFENSE

The claims in the Complaint may be barred, in whole or in part, by reason of Plaintiffs' own actions, including, but not limited to, their own breaches of contract and warranty.

## FIFTH DEFENSE

The claims in the Complaint may be barred, in whole or in part, because Plaintiffs have sustained no actual damages attributable to any action or inaction taken by AWG.

## SIXTH DEFENSE

Plaintiffs' damages, if any, should be offset by the damages owed AWG.

## SEVENTH DEFENSE

AWG asserts all affirmative defenses that the facts may establish are available under Federal Rules of Civil Procedure 8 and 12, as if such defenses were set forth verbatim herein.

## EIGHTH DEFENSE

AWG gives notice that it intends to rely on affirmative defenses that become available or apparent during discovery and thus reserves the right to amend or supplement its Answer, file further pleadings, and assert additional claims and defenses as supported by the evidence.

## NINTH DEFENSE

In response to the specific allegations of Plaintiffs' Complaint, AWG states as follows:

1.      In response to the allegations in Paragraph 1 of the Complaint, AWG admits that it is a North Carolina corporation. AWG is currently without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 1 and, therefore, denies them. AWG specifically denies that it is liable in any way for the purported damages Plaintiffs claim in their Complaint.

2.      In response to the allegations in Paragraph 2 of the Complaint, AWG states that the contract under which this case arises speaks for itself and, thus, no response is necessary to

Plaintiffs' characterization of same; to the extent a response is required to that characterization, AWG denies the allegations.

3.      In response to the allegations in Paragraph 3 of the Complaint, AWG admits that it is a North Carolina corporation. AWG is currently without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 3 and, therefore, denies them.

4.      AWG admits the allegations in Paragraphs 4 and 5 of the Complaint.

5.      In response to the allegations in Paragraph 6 of the Complaint, AWG states that the contract under which this case arises speaks for itself, and thus, no response is necessary to Plaintiffs' characterization of same; to the extent a response is required to that characterization, AWG denies the allegations. AWG expressly denies that it "owes" Plaintiffs any amount and states that Plaintiffs' damages, if any, should be offset by the damages Plaintiffs owe to AWG.

6.      In response to the allegations in Paragraph 7 of the Complaint, AWG states that the referenced "Exhibit B" speaks for itself, and thus, no response is necessary to Plaintiffs' characterization of same; to the extent a response is required to that characterization, AWG denies the allegations. AWG expressly denies that Plaintiffs are "owed" any amount and states that Plaintiffs' damages, if any, should be offset by the damages Plaintiffs owe to AWG. Moreover, AWG objects to Plaintiffs' attachment of Exhibit B to the Complaint, as the letter is settlement correspondence that falls under the protection of FRE 408.

7.      In response to the allegations in Paragraph 8 of the Complaint, AWG states that the contract under which this case arises speaks for itself, and thus, no response is necessary to Plaintiffs' characterization of same; to the extent a response is required to that characterization, AWG denies the allegations. The remaining allegations in Paragraph 8 of the Complaint state or

call for a legal conclusion to which no response is required. To the extent a response is required, AWG denies the allegations.

8.      In response to the allegations in Paragraph 9 of the Complaint, AWG states that the referenced "Exhibit B" speaks for itself, and thus, no response is necessary to Plaintiffs' characterization of same; to the extent a response is required to that characterization, AWG denies the allegations. Moreover, AWG objects to Plaintiffs' attachment of Exhibit B to the Complaint, as the letter is settlement correspondence that falls under the protection of FRE 408.

9.      In response to the allegations in Paragraph 10 of the Complaint, AWG states that the contract under which this case arises speaks for itself, and thus, no response is necessary to Plaintiffs' characterization of same; to the extent a response is required to that characterization, AWG denies the allegations. AWG expressly denies that it "owes" Plaintiffs any amount and states that Plaintiffs' damages, if any, should be offset by the damages Plaintiffs owe to AWG.

10.     In response to the allegations in Paragraph 11 of the Complaint, AWG states that the contract under which this case arises speaks for itself, and thus, no response is necessary to Plaintiffs' characterization of same; to the extent a response is necessary to that characterization, AWG denies the allegations. AWG expressly denies that it is liable for Plaintiffs' attorneys' fees.

11.     In response to the allegations in the twelfth paragraph of the Complaint, which Plaintiffs have apparently inadvertently numbered as the second Paragraph 10, AWG states that the contract under which this case arises speaks for itself, and thus, no response is necessary to Plaintiffs' characterization of same; to the extent a response is required to that characterization, AWG denies the allegations.

12.     Each and every other allegation of the Complaint that is not expressly admitted or otherwise answered is hereby denied.

13.     Insofar as the Complaint's prayer for relief contains allegations that must be admitted or denied, AWG denies them.

**COUNTERCLAIM**

American Welding & Gas, Inc. ("AWG"), by counsel, alleges and states as follows for its Counterclaim against Arc Welding Supply Co., Inc. and Charles R. McCormick (collectively, "Plaintiffs"):

1.      The parties entered into an Asset Purchase Agreement ("**Agreement**") on October 1, 2014. *See* attached **Exhibit A**.

2.      Under Article 1, Section 1.1(a) of the Agreement, Plaintiffs expressly agreed "to sell, convey, transfer, and deliver" to AWG certain "Asset Cylinders" used in Plaintiffs' business and located at their store location or at the premises of their customers.

3.      Article 1, Section 1.1(a) of the Agreement defines "Asset Cylinders" to mean "gas cylinders, liquid cylinders, propane cylinders, cryogenic cylinders, tanks, and dewars, including dock stock and rental cylinders."

4.      Per Article 1, Section 1.1(a) of the Agreement, the asset cylinders being sold to AWG were "set forth on Schedule 1.1(a)."

5.      In Schedule 1.1(a), Plaintiffs promised and confirmed to AWG that there were a total of 6,500 asset cylinders being sold to AWG.

6.      Per Article 2, Section 2.1(e) of the Agreement, $603,905.00 of the purchase price to be paid by AWG was attributable to "Equipment as defined in Section 1.1(b), Motor Vehicles, as defined in Section 1.1(i), and Asset Cylinders as defined in Section 1.1(a)…." In other words, $603,905.00 of the purchase price was attributable, in part, to the cost of 6,500 asset cylinders.

7.      In Article 5, Section 5.7(a) of the Agreement, Plaintiffs warranted to AWG that it "own[ed] all of the Purchased Assets and will transfer them to [AWG]…." Plaintiffs warranted

to AWG that it would "acquire good and marketable title to the Purchased Assets, free and clear of any Encumbrances" and that the "Purchased Assets are in good and operating condition…."

8.      Per Article 1, Section 1.1(a) of the Agreement and Schedule 1.1(a), the "Purchased Assets" referenced in Article 5, Section 5.7(a) include all 6,500 asset cylinders.

9.      Based upon Plaintiffs' promise, confirmation, and warranty to AWG as to the quantity of asset cylinders being sold to AWG, AWG accepted Plaintiffs' offer as to the purchase price and the parties closed on the Agreement on October 1, 2014.

10.     AWG paid the purchase price per the Agreement's terms.

11.     Under Article 2, Section 2.1(f) of the Agreement, the parties explicitly agreed that the quantity of asset cylinders would "not be verified to the satisfaction of [AWG] prior to Closing," and in light of this fact, $150,000.00 of the purchase price was to be deferred for 180 days to permit AWG to count and verify the quantity of asset cylinders.

12.     The parties also agreed that after the 180-day period, "any shortage of Asset Cylinders shall be charged at the rate of $125.00 per unit against the [$150,000.00 deferred payment], and any excess of Asset Cylinders will be added at the rate of $125.00 per unit to the [$150,000.00 deferred payment]." The balance of the $150,000.00 deferred payment, if any, was to be paid to Plaintiffs, plus interest at 4% per annum from October 1, 2014.

13.     After the closing, AWG conducted an audit to count and verify the quantity of asset cylinders located at Plaintiffs' store location or at the premises of Plaintiffs' customers.

14.     This audit revealed that only 4,663 asset cylinders of the promised 6,500 asset cylinders were present -- a shortage of 1,837 asset cylinders (*i.e.*, 28% of the asset cylinders promised to and purchased by AWG as part of the Agreement).

15.     To date, Plaintiffs have not given AWG the remaining 1,837 asset cylinders.

16.     Under Article 2, Section 2.1(f) of the Agreement, AWG multiplied the shortage of 1,837 asset cylinders by the rate of $125.00 per unit (for a total of $229,625.00) and charged this $229,625.00 amount against the $150,000.00 deferred payment.

17.     Because the shortage of asset cylinders was so substantial that the $150,000.00 deferred payment did not cover the $229,625.00 price, this resulted in AWG being due a refund in the amount of $79,625.00 from Plaintiffs, plus interest at 4% per annum from October 1, 2014.

18.     AWG advised Plaintiffs that it was due a refund in the amount of $79,625.00, but Plaintiffs failed and/or refused to pay the refund and retained AWG's money.

19.     Article 2, Section 2.1(a) of the Agreement contains provisions regarding Plaintiffs' collectible accounts receivable. AWG stipulates that under these provisions, $43,859.48 is due to Plaintiffs from AWG, plus interest at 4% per annum from October 1, 2014.

20.     As a result, under the Agreement, $79,625.00 (plus interest at 4% per annum from October 1, 2014) is due to AWG from Plaintiffs, and $43,859.48 (plus interest at 4% per annum from October 1, 2014) is due to Plaintiffs from AWG. The net result is that Plaintiffs owe AWG.

## COUNT I - BREACH OF CONTRACT

21.     AWG re-affirms and re-alleges each and every allegation set forth in Paragraphs 1 through 20 of its Counterclaim.

22.     Plaintiffs entered into a contract with AWG whereby Plaintiffs promised to sell and AWG promised to purchase and pay for 6,500 asset cylinders to AWG.

23.     AWG complied with its payment obligation under the Agreement, as it purchased 6,500 asset cylinders from Plaintiffs and paid for them per the Agreement's terms.

24.     Despite AWG's payment, Plaintiffs have failed and/or refused to provide AWG with the promised 6,500 asset cylinders and, therefore, breached their contractual obligations.

25.     In fact, Plaintiffs have only provided AWG with 4,663 asset cylinders, which is a

shortage of 1,837 asset cylinders.

26.     Such a breach is material as a matter of law, and has proximately caused damage to AWG. Plaintiffs are therefore liable to AWG for all amounts due and owing.

27.     AWG is entitled to a judgment against Plaintiffs for breach of contract.

## COUNT II - UNJUST ENRICHMENT

28.     AWG re-affirms and re-alleges each and every allegation set forth in Paragraphs 1 through 27 of its Counterclaim.

29.     AWG purchased 6,500 asset cylinders from Plaintiffs and paid for them per the Agreement's terms.

30.     Despite this fact, Plaintiffs have failed and/or refused to provide AWG with the promised 6,500 asset cylinders and have instead only provided AWG with 4,663 asset cylinders.

31.     Per the parties' Agreement, AWG had retained $150,000.00 of the purchase price as a deferred payment in case there was a shortage in the number of asset cylinders, but because the shortage of 1,837 asset cylinders was so substantial that the $150,000.00 deferred payment did not cover the units' $229,625.00 price, this resulted in AWG being due a refund in the amount of $79,625.00 from Plaintiffs, plus interest at 4% per annum from October 1, 2014.

32.      AWG advised Plaintiffs that it was due a refund in the amount of $79,625.00, but Plaintiffs failed and/or refused to pay the refund and retained AWG's money.

33.     Thus, Plaintiffs have been unjustly enriched, as they have received the benefit of $79,625.00 of funds they received from AWG for the promised 6,500 asset cylinders, but they have failed to provide AWG with all of the asset cylinders for which AWG paid. Plaintiffs are therefore liable to AWG for all amounts due and owing.

34.     AWG is entitled to a judgment against Plaintiffs for unjust enrichment.

## COUNT III - BREACH OF WARRANTY

35.      AWG re-affirms and re-alleges each and every allegation set forth in Paragraphs 1 through 34 of its Counterclaim.

36.      Plaintiffs entered into a contract with AWG whereby Plaintiffs provided AWG a warranty regarding (a) Plaintiffs' ownership of 6,500 asset cylinders that would be transferred to AWG; (b) AWG's acquisition of good and marketable title to the 6,500 asset cylinders; and (c) AWG's acquisition of the 6,500 asset cylinders in good and operating condition.

37.      Specifically, in Article 5, Section 5.7(a) of the Agreement, Plaintiffs warranted to AWG that Plaintiffs "own[ed] all of the Purchased Assets and will transfer them to [AWG]…." Plaintiffs also warranted to AWG that it would "acquire good and marketable title to the Purchased Assets, free and clear of any Encumbrances" and that the "Purchased Assets are in good and operating condition…."

38.      Per Article 1, Section 1.1(a) of the Agreement and Schedule 1.1(a), the "Purchased Assets" referenced in Article 5, Section 5.7(a) include all 6,500 asset cylinders.

39.      Plaintiffs breached the warranty it made in the Agreement by (a) failing to own the 6,500 asset cylinders; (b) failing to transfer the 6,500 asset cylinders to AWG; (c) failing to provide AWG with good and marketable title to the 6,500 asset cylinders; and (d) failing to provide the 6,500 asset cylinders in good and operating condition.

40.      Plaintiffs are in default of their warranty obligations, as they have failed to honor the warranty upon notice. Plaintiffs' failure to provide AWG with the remaining asset cylinders or a refund of $79,625.00 of the purchase price is a breach of warranty and of their obligations.

41.      Such a breach is material as a matter of law and has proximately caused damage to AWG. Plaintiffs are therefore liable to AWG for all amounts due and owing.

42.      AWG is entitled to a judgment against Plaintiffs for breach of warranty.

WHEREFORE, Defendant American Welding & Gas, Inc. demands as follows:

A.     Judgment dismissing the Complaint with prejudice;

B.     Plaintiffs take nothing by way of their Complaint;

C.     Judgment in its favor for amounts due and owing under the contract and

additional amounts to be determined at trial, plus pre-judgment interest as provided for by law;

D.     An award of post-judgment interest at the maximum rate allowed by law;

E.     Its costs herein expended; and

F.     Any and all other relief to which it may be entitled.

Respectfully submitted,


/s/ Christopher W. Brooker_____
Christopher W. Brooker
cbrooker@wyattfirm.com
Amanda Warford Edge
aedge@wyattfirm.com
WYATT, TARRANT & COMBS, LLP
500 West Jefferson Street, Suite 2800
Louisville, KY  40202-2898
Telephone: 502.589.5235
Facsimile: 502.589.0309

*Counsel for Defendant*
*American Welding & Gas, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Answer and Counterclaim has been served on this, the 1st day of September, 2016 via the Court's CM/ECF system, which will send notice of electronic filing to the following:

Jeffrey B. Kolb
Charles E. Taylor
KOLB ROELLGEN & KIRCHOFF LLP
801 Busseron Street
P.O. Box 215
Vincennes, IN 47591

*Counsel for Plaintiffs,*
*Arc Welding Supply Co., Inc. and*
*Charles R. McCormick*

          /s/ Christopher W. Brooker_____
          *One of Counsel for Defendant*
          *American Welding & Gas, Inc.*

61534836.2

11